UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA LATARTE,

    Plaintiff,                            CIVIL ACTION NO. 08-13022

v.

                                        DISTRICT JUDGE SEAN COX
                                        MAGISTRATE JUDGE DONALD A. SCHEER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

<u>RECOMMENDATION</u>: Plaintiff's Motion for Summary Judgment should be DENIED, and that of Defendant GRANTED, as there was substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work.

\*　\*　\*

Plaintiff filed an application for Social Security disability income benefits on August 31, 2004, alleging that she had been disabled and unable to work since October 1, 2002, at age 31, due to severe back and shoulder pain as well as mental depression. Benefits were denied by the Social Security Administration (SSA). A requested <u>de novo</u> hearing was held on May 3, 2006, before Administrative Law Judge (ALJ) Richard Sesena. The ALJ subsequently found that the claimant was not entitled to disability benefits because she retained the ability to perform a restricted range of simple, sedentary work providing a sit-stand option. The Law Judge also restricted claimant from jobs that required overhead lifting with her left arm or the climbing of ladders. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review

is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Claimant was 34 years old at the time of the administrative hearing (TR 758). She had been graduated from high school, and had been employed during the relevant past as a paramedic and nurse assistant (TR 64, 758). As a paramedic for a private ambulance company, Plaintiff alternated between sitting and standing for a majority of the workday. She constantly had to handle, grip and manipulate large and small objects. She had to lift up to 50 pounds on a regular basis (TR 65). Claimant stopped working in October 2002, after injuring her back and shoulder when the ambulance in which she was riding in was struck by an automobile[1] (TR 757).

Plaintiff alleged that she was disabled as a result of back, left shoulder and hip pain (TR 762). She also suffered from migraine headaches several times a month, which often times caused her to feel nauseated (TR 765). Despite physical therapy and epidural injections, Plaintiff doubted that she could return to work due to severe back and shoulder pain (TR 768-769). She remained capable of shopping, cooking, housekeeping, socializing and doing her laundry (TR 85-87, 770). Medications provided some pain relief, and Plaintiff often used a heating pad to alleviate her discomfort (TR 764). Claimant had to lie down several times a day in order to get pain relief (TR 764, 774). She was allegedly unable to sit or stand for prolonged periods (TR 771-772). Plaintiff estimated that she could lift about 15 pounds (TR 771). The claimant denied taking medications for depression, but she

---

[1] Plaintiff received workers' compensation benefits for several months after the automobile accident. All her medical expenses were paid, and she received a lump sum of approximately three thousand dollars from the insurance carrier (TR 759-760).

**2**

claimed that marital problems motivated her to seek psychological counseling (TR 776-777).

A Vocational Expert, Timothy Shaner, classified Plaintiff's past work as heavy, skilled and semi-skilled activity, which did not impart any transferable skills (TR 782). The witness testified that there would not be any jobs for claimant to perform if her testimony were fully accepted[2] (TR 784). If she were capable of sedentary work, however, there were numerous unskilled assembly, packaging and attendant jobs that she could still perform with minimal vocational adjustment (TR 783). These simple, routine jobs allowed a sit-stand option, and did not require ladder climbing or overhead lifting with the left arm (TR 782-783).

<u>LAW JUDGE'S DETERMINATION</u>

The Administrative Law Judge found that Plaintiff was impaired as a result of chronic low back pain, migraine headaches and depressive/anxiety disorders stemming from her automobile accident, but that she did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's pain prevented her from working at jobs requiring her to sit or stand for prolonged periods, and from work involving frequent crouching, crawling, stooping, climbing or balancing. The Law Judge also restricted claimant from jobs that required ladder climbing or overhead lifting with her left arm. Nevertheless, the Law Judge found that Ms. Brown retained the residual functional capacity to perform a significant number of sedentary jobs, within those limitations, as identified by the Vocational Expert.

---

[2]The witness testified that claimant's alleged need to lie down for several hours a day to relieve her back discomfort would preclude all work activity (TR 784).

**3**

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff maintains that substantial evidence does not exist on the record that she remains capable of performing a limited range of sedentary work activity. She also argues that the ALJ improperly evaluated her credibility, and did not take into consideration her mental functional limitations. Defendant counters that the claimant retains the residual functional capacity for a reduced range of sedentary work because the objective clinical

evidence of record[3] did not confirm the disabling nature of her joint pain or mental depression.

DISCUSSION AND ANALYSIS

Substantial evidence existed on the record supporting the Commissioner's conclusion that Plaintiff retained the residual functional capacity for a restricted range of sedentary work. The medical evidence, as a whole, failed to provide objective support for Plaintiff's allegations of severe and totally disabling functional limitations stemming from her joint pain or depressive disorder.

The claimant does not challenge the ALJ's determination that she retained the physical capacity for sedentary work during the relevant period. Her sole contention is that the ALJ's hypothetical questions to the vocational expert failed to incorporate all of her mental limitations, particularly those noted by treating sources. (See pp. 6-17 of Plaintiff's memorandum in support of Summary Judgment).

The ALJ based his residual mental capacity findings primarily upon the opinion of two psychologists, Katherine Dollard and Mark Garner, who evaluated claimant in November and December 2004, respectively, and completed documentation that addressed her mental impairment. Plaintiff reportedly was in good contact with reality. Her motivation seemed fair, and insight and judgment remained unimpaired. Claimant's speech was spontaneous, relevant, logical and organized. (TR 224).

---

[3]In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the Law Judge. Cotton v. Sullivan, 2 F.3rd 692 (6th Cir. 1993); Casey v. Secretary, 987 F.2d 1230, 1233 (6th Cir. 1993); Wyatt v. Secretary, 974 F.2d 680, 685 (6th Cir. 1993). Consequently, the evidence Plaintiff submitted to the Appeals Council (TR 477-752) was not considered by the undersigned.

A mental capacity evaluation by Dr. Dollard noted that Plaintiff had an adequate memory and that she possessed a good fund of information. Claimant was able to perform mathematical calculations, and could engage in abstract thinking (TR 225-226). She was able to make comparisons, and point out the similarities and differences between objects (TR 226). Dr. Dollard indicated that claimant's depression and anxiety problems were exacerbated by her back pain, unemployed status and financial problems (TR 227). The psychologist diagnosed a major depressive disorder, but she calculated Plaintiff's Global Assessment Function (GAF) score at 49, indicating serious, not severe, difficulties in occupational performance (TR 227).

In a separate residual functional capacity evaluation, Dr. Mark Garner, Ph.D., found that Plaintiff had only mild limitations of activities in daily living, moderate difficulties maintaining social functioning, and moderate difficulties in maintaining concentration, persistence and pace. Dr. Garner added that there were no episodes of decompensation (TR 238). In considering Plaintiff's ability to perform work-related functions, Dr. Garner opined that she retained the mental capacity to perform simple tasks on a sustained basis (TR 244).

The ALJ included significant mental limitations in his residual functional capacity finding. The Law Judge recognized that the claimant was limited in understanding, remembering and carrying out complex, detailed instructions. Consequently, he limited Plaintiff to jobs that involved simple, routine work. Furthermore, the Law Judge found that the claimant could not engage in work involving repetitive tasks (TR 22).

The Law Judge's hypothetical questions to the Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive disorder. There is no

merit to Plaintiff's argument that the ALJ should have included a limitation that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled work, by definition, is limited to understanding, remembering and carrying out only simple instructions and requiring little, if any, judgment. 20 C.F.R. 404.1568(a) (2008). Moreover, Plaintiff was able to concentrate enough to watch television, read to her children, drive her children to school, attend school functions and care for her family's needs (TR 772-774). Furthermore, the claimant reported that she was not on any psychiatric medications at the time of the hearing because her doctor would not give her a prescription (TR 777). Under these circumstances, the ALJ's hypothetical questions accurately portrayed Plaintiff's impairment. The Vocational Expert was aware of claimant's mental limitations before he identified the types of jobs that the Plaintiff could still perform[4] (TR 782-783).

It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that her

---

[4]Moreover, any interpretation that would require vocational experts to evaluate the effect of medical conditions would be inconsistent with the purpose that vocational experts serve under social security regulations. Under those regulations, the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an "assessment of [her] residual functional capacity." 20 C.F.R. § 416.920(a)(4)(iv) (2008), The vocational expert testifies on the basis of a claimant's "residual functional capacity and ... age, education, and work experience" and assesses whether the claimant "can make an adjustment to other work." 20 C.F.R. § 416.920(a)(4)(v) (2008). The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she "can and cannot do," there exist a significant number of employment opportunities for her in the regional and national economies. The vocational expert is not expected to evaluate the claimant's medical conditions in making this determination. Indeed, vocational experts are not required to have any medical training, so any evaluation of medical evidence they perform would be outside their area of expertise.

testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence.  Such observation is invaluable and should not be discarded lightly.  Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978).  See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that she could not return to her past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that she had the vocational qualifications to perform alternative jobs in the economy, notwithstanding her various impairments. The Commissioner, however, met his burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to hypothetical questions that took into consideration claimant's educational and vocational background, along with her significant impairments, the Vocational Expert testified that there were numerous unskilled assembly, packaging and attendant jobs that she could still perform with minimal vocational adjustment (TR 783).  These simple, routine jobs allowed a sit-stand option, and did not require ladder climbing or overhead lifting with the left arm (TR 782-783). Given the objective clinical findings of the examining physicians of record, substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of sedentary work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise.  Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

          s/Donald A. Scheer  
          DONALD A. SCHEER  
          UNITED STATES MAGISTRATE JUDGE  
DATED: February 24, 2009
_____

### CERTIFICATE OF SERVICE

I hereby certify on February 24, 2009 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on February 24, 2009: **None.**

          s/Michael E. Lang  
          Deputy Clerk to  
          Magistrate Judge Donald A. Scheer  
          (313) 234-5217